## LOSS OF MERCHANDISE BY FLOOD WHILE IN TRANSIT.

Common Pleas Court of Champaign County.

URBANA EGG CASE COMPANY v. THE NYPANO RAILROAD COMPANY
AND THE ERIE RAILROAD COMPANY.

Decided, September 15, 1914.

*Negligence—Not Proximate Cause of Loss—Where Concurrent With an Act of God and the Loss Not One Which Could Have Been Foreseen.*

A shipment of merchandise was received by the E. R. R. Co. at Urbana, O., on March 20th, 1913, for shipment to Cincinnati, Ohio. In the course of transportation, the shipment arrived at Dayton on the same day and was delivered to a connecting carrier for transportation to Cincinnati. While awaiting further movement in the yards of the latter carrier at Dayton, the shipment was destroyed in the flood occurring on the morning of March 25th, 1913, which was an unusual, extraordinary and unprecedented flood, amounting to an act of God, which the carriers could not reasonably have anticipated; *Held:*

That the act of God and not the delay, although they existed concurrently in point of time, was the approximate cause of the loss, and that, therefore, defendants are not liable.

MIDDLETON, J.

This action is brought to recover for certain merchandise shipped by plaintiff over defendant's line of railway, from Urbana, Ohio, to Cincinnati, Ohio, on the 20th day of March, 1913, and lost at Dayton, Ohio, in transit, March 25th, 1913. The value of the merchandise so lost is placed at $547.81, which plaintiff claims with interest at the rate of six per cent. from the 26th day of March, 1913.

The averments of the petition in substance are that plaintiff is a corporation, and that the Nypano and Erie Railroad companies are corporations; that the Nypano Railroad Company is the owner of a railroad running through Urbana, Champaign county, Ohio, which is leased to and operated by the Erie Railroad Company; that said companies are common carriers of

goods for hire, from Urbana to Cincinnati by way of Dayton; that on the 20th day of March, 1913, plaintiff delivered to defendants at Urbana the following merchandise: 50 cases straw board fillers packed; 12 sets in gum wood cases; 2 bundles straw board flats; 325 cases medium straw board fillers packed; 12 sets in gum wood cases; 325 cases medium straw board fillers packed; 12 sets in cotton wood cases; 30 bundles extra straw board flats.

That defendants received said merchandise into their custody and possession at Urbana, and promised and agreed to immediately ship the same to Cincinnati, and that defendants shipped said merchandise away from Urbana on the 20th day of March, 1913, but that the same had not arrived at Cincinnati on the 26th of March, 1913, but was delayed at Dayton; that on the 26th of March, through the carelessness and negligence of defendants in failing to ship said merchandise out of the city of Dayton to Cincinnati, said merchandise was destroyed; that by the use of ordinary diligence, the defendants could have shipped all of said merchandise to its destination at Cincinnati before its destruction by a flood which occurred on the 26th day of March, 1913, at Dayton; and that by said carelessness and negligence of defendants, said merchandise was lost to plaintiff. Wherefore, plaintiff prays judgment against the defendants in the sum of $547.81 with interest.

Separate answers are filed by the Nypano and Erie Railroad companies—the Nypano Railroad Company by answer admitting several formal allegations of the petition, but denying each and every other allegation in the petition contained. The Erie Railroad Company, admitting certain formal allegations of the petition, further admits that on March 20th, 1913, plaintiff delivered to it certain merchandise for shipment to Cincinnati; that said property had not on March 26th, 1913, arrived at Cincinnati, and that said property was damaged in a flood occurring in the city of Dayton, and that said flood occurred on March 25th, 1913; but denies each and every other allegation in the petition contained.

For a second defense it avers in substance that plaintiff entered into a written agreement for the carriage of said mer-

chandise with defendant, and that defendant agreed to carry and deliver said merchandise to its destination if on its route, otherwise to another carrier en route to its destination, and that in said contract it was provided that no carrier or party in possession of the property therein described should be liable for any loss thereof or damage thereto or delay caused by the act of God, and says that while said property was at Dayton in course of transportation, there occurred a great and sudden flood of water in and through the city of Dayton, and the car containing said shipment was caught in said flood; that the flood occurred in the early morning on the 25th of March, 1913, and was an unusual, extraordinary and unprecedented flood occasioned by heavy rainfall which caused the Great Miami river and other streams and natural water-courses in and about the city of Dayton, to overflow their banks and inundate the valley in which said city is located; that said rainfall was the greatest that has occurred in the valleys of the Great Miami river in an equally short time and at the same season of the year, for many years past, and that the high water mark of the Great Miami river and other streams were exceeded by several feet; that said flood of water arose so suddenly and unexpectedly and was of such volume that there was no opportunity to save or protect plaintiff's said property or other freight in possession of carriers at Dayton; and avers that this flood was the proximate cause of the damage to plaintiff's merchandise, and that said flood was an act of God; and prays to be dismissed with costs.

For reply to the second defense of the answer of the Erie Railroad Company, the plaintiff denies each and every allegation and averment therein contained not admitted to be true and prays as in its petition.

The issues thus made by the pleadings are submitted to the court upon an agreed statement of facts. The essential facts agreed upon are as follows: that plaintiff and defendants are each corporations, as averred; that defendants are common carriers; that on the 20th of March, 1913, plaintiff delivered to defendants, through their agents and employees, at Urbana, the merchandise set forth in plaintiff's petition; that the same was reasonably worth the sum of $547.81; that defendants agreed

to transport the same with reasonable dispatch to Cincinnati, Ohio, the point of destination; that said merchandise was shipped by defendant from Urbana, Ohio, on its railroad March 20, 1913, car leaving Urbana at 1:50 P. M. of said date, and that it arrived at Dayton at 4:25 P. M. on the same day; and that said car had not arrived at Cincinnati on the 26th of March, 1913; that the distance between Urbana and Dayton is between thirty-five and forty miles and the distance between Dayton and Cincinnati about sixty miles; that the usual time occupied in shipping a car of freight from Urbana to Cincinnati is less than twenty-four hours when no accident occurs to prevent it; that plaintiff made out and delivered to it a bill of lading; that said bill of lading provided on the back thereof that defendant should not be liable for any loss or damage to said goods caused by the act of God or for any delay caused by an act of God; that said property was damaged in the flood which occurred in the city of Dayton; that said flood occurred in the morning of March 25th, 1913, and was extraordinary and unprecedented and was occasioned by heavy rains; that said flood of water rose suddenly and unexpectedly and was of great violence, and that said flood was an act of God, and that defendants could not reasonably have anticipated said flood; and that if said delay by the defendants in shipping said merchandise had not occurred, the same would have arrived at its destination before its destruction by the said flood in Dayton.

The legal questions necessary for a determination of the rights and liabilities of the parties arising upon the agreed statement of facts, have been thoroughly and ably discussed by counsel, orally and by briefs; and the court has endeavored to devote to the consideration of the questions involved, that time and care which the importance of the case demands.

Counsel have rendered very material aid to the court in its consideration of the case, not only by their examination and presentation of authorities and thorough discussion of the same, but also by agreeing upon all the essential and material facts necessary to a determination of the question of the liability of the defendants for the loss sustained by the plaintiff.

It is agreed that the merchandise delivered to the defendants on March 20th; that the car containing the same left Urbana at

1:50 P. M. on that date and arrived at Dayton at 4:25 P. M. of the same afternoon; that it is about sixty miles from Dayton to Cincinnati and that the usual time occupied in shipping a car of freight from Urbana to Cincinnati is less than 24 hours, and that the car had not arrived at Cincinnati on the 26th day of March, 1913, or six days after the date when the car left Urbana.

These admitted facts the court is of the opinion show an unusual and unnecessary delay in the transportation of this merchandise from Urbana to Cincinnati, and therefore negligence on the part of the defendants in delaying the shipment as averred in the petition of the plaintiff.

It is further agreed that the bill of lading provides that the defendants should not be liable for any loss or damage to said goods caused by the act of God or for delay caused by the act of God; that said property was damaged in the flood which occurred in the city of Dayton on March 25th, 1913, and that said flood was an act of God, and that defendant could not reasonably have anticipated the same, and that if the delay by defendants in shipping the merchandise had not occurred, the same would have arrived at its destination before its destruction by the flood in Dayton.

The sole and only question therefore for the court to determine is whether the flood or act of God was the proximate cause of the loss of the merchandise, or whether defendants' negligent delay in transporting the merchandise concurred with the flood or act of God in causing its destruction. If the act of God was the sole, proximate cause, the defendants are not liable. If the wrongful act of negligence of the railroad companies concurred with the act of God in causing the loss, then the railroad company would be liable.

The question for consideration and determination is correctly stated by counsel for the plaintiff in their brief as follows:

"Whether or not the carrier is liable for the loss, who by a negligent delay in transporting goods, has subjected them in the course of transportation to any peril which has caused their destruction, at the point where the delay occurred and whilst the wrongful act was in operation and force or the negligent delay continued, and for the consequences of which the carrier would not have been liable had there been no negligent delay intervening."

An examination of the authorities on this question discloses a conflict in the decisions of the courts in the different states and in some federal courts. Authorities have been cited in the briefs filed and frankly and fairly discussed by counsel in this case, both for the plaintiff and the defendant, and have been carefully studied and considered by the court, but the court will not undertake here a further comparison or consideration of the same, as to do so would serve no valuable purpose and would extend this opinion beyond what is necessary to a clear statement of the reasons for the conclusion reached by it. The court has endeavored in its consideration of the case, to ascertain and apply if possible the underlying principles of the law of negligence, as announced by various decisions rendered by the Supreme Court of the state of Ohio, deeming this a safer course than to undertake to apply to the case any of the reasoning found in the conflicting opinions rendered by the courts of other states.

The court has already stated that if the flood or act of God that caused the destruction of plaintiff's merchandise was not the proximate cause of the loss, the defendant would not be liable; but that if defendants' negligent delay in shipping the goods was a concurring proximate cause of the loss, then defendant would be liable. It becomes therefore essential to determine whether the negligent delay of the defendant in transporting the merchandise from Urbana to Cincinnati was a concurring proximate cause of the loss.

It is admitted by the agreed statement of facts that the act of God destroyed the goods and that this act of God could not have been reasonably anticipated by the defendant; also that in point of time, the act of God and the negligent delay of the defendant concurred in causing the loss. But a careful consideration of the principles involved in the question, leads the court to the conclusion that concurrency in time merely in this respect is of no legal importance unless there was also concurrency in proximate results. In other words, when we speak of two negligent acts concurring in producing a loss or injury, we do not mean so much that they happened at the same time as we do that the immediate or proximate results of the commission

of the two negligent acts concurred in producing the loss or injury.

It becomes important then to determine first, if we can, just what is meant by the immediate and proximate result of a negligent act, so that we can then see whether the immediate and proximate result of the negligent delay of defendants in shipping the merchandise in this case was its loss by the act of God or the flood.

On this question the latest expression of our Supreme Court in *Miller* v. *R. R. Co.*, 78 O. S. Rep., 309, is decidedly illuminating. The law is stated in the syllabus of that case as follows:

"1. In an action to recover damages for injury sustained through the negligence of another, the law regards only the direct and proximate results of the negligent act as creating liability against the wrong-dower.

"2. In contemplation of law, any injury that could not have been forseen or reasonably anticipated as the probable result of an act of negligence is not actionable."

And on page 325, Crew, J., in announcing the opinion of the court says:

"The rule is elementary, that a defendant in an action for negligence can be held to respond in damages only for the immediate and proximate results of the negligent act complained of, and in determining what is the direct or proximate cause, the rule requires that the injury sustained shall be the natural and probable consequence of the negligence alleged; that is, such consequences as under the surrounding circumstances of the particular case might and should have been foreseen or anticipated by the wrong-doer as likely to follow his negligent act."

So that in determining in this case whether the negligent delay of the defendant was a concurring proximate cause of the loss, the rule requires that the loss should be the natural and probable consequences of the negligent delay. In other words, as stated in the opinion of the court in the case just quoted from, the loss of the merchandise or injury sustained by the plaintiff must have been such consequence as under the surrounding circumstances of the case might and should have been foreseen by the defendant railroads as likely to follow their delay in ship-

ping the goods. If, under the surrounding circumstances, the defendant railroad company might and should have foreseen or anticipated that by reason of their negligent delay in shipping the merchandise, it would be·injured or destoryed by the act of God or flood which did destroy it, then the defendant would be liable. But if, under all the surrounding circumstances of the case, the defendant railroad companies could not foresee or anticipate that their negligent delay in shipping the goods would result in their being injured or destroyed by the act of God or the flood which did destroy them, then the railroad company would not be liable.

Whether the defendant railroad companies might and should have foreseen or anticipated that their unreasonable delay in shipping this merchandise would likely result in its being destroyed by the flood or act of God is answered by the agreed statement of facts, page 2, in this case as follows: "It is agreed that the defendants could not reasonably have anticipated said flood."

The Supreme Court of Ohio in the case of *Daniels* v. *Ballentine,* 23 O. S., 532, has considered and decided a question very similar to, if not entirely like the one involved in the case at bar, the only difference between that and the case at bar being that in that case the unreasonable delay in the voyage by which the goods or property lost was being transported had ceased and the voyage had been resumed when the storm or act of God injured the goods or property. In the case at bar the unreasonable or negligent delay was continuing at the time the flood or act of God destroyed the merchandise. But the court thinks this difference had no influence upon the decision reached by the Supreme Court in that case, and a careful study of that case leads the court to the opinion that the principle upon which the Supreme Court decided the question in that case applies with equal force to the case under consideration.

It is true that in the syllabus and in the opinion in the Daniels-Ballentine case, the court makes mention of the fact that the ·delay or suspension was over before the storm; but this court thinks not because it made any difference in the consideration of the case, but because that was the shape in which

that case presented the question of proximate cause, and the court very properly and naturally discussed and confined its decision to the kind of case it had before it. There is nothing in the discussion of the case by the court that implies that a different decision would have been reached had the storm occurred during the suspension of the voyage. On the contrary, the principle upon which the court based its decision applies just as strongly in a case where the negligent delay continued as in one where it had ceased, viz., that the act of God was not the proximate result of the delay because the two events had in the nature of things no natural or necessary connection.

In the discussion of the case this point is made very clear. The court says at page 539 that in suits at common law to recover damages for breach of contract or tort, the liability of the defendant depends upon the natural and probable connection between the breach of contract or tort and the alleged injurious consequences. Hence, in such cases, while the responsibility of the defendant is not necessarily restricted to the direct and immediate consequences of his fault, it does not extend to consequences which can not be regarded as the natural result of his conduct, and which on that account could not by ordinary forecast be anticipated.

The language of the Supreme Court in this connection is significant; *i. e.,* in substance that the liability of the defendant in a suit to recover for a tort or breach of contract, does not extend to consequences which can not be regarded as the natural result of his conduct, and which on that account could not, by ordinary forecast, be anticipated. On page 540 the court says:

"As the event proved, the storm would not have been encountered if no delay had occurred, but this was a merely fortuitous result. It was not a consequence which arose naturally, *i. e.,* according to the usual course of things, from the particular breach of contract complained of."

This statement by the court would have applied with equal force had the storm been encountered while the barge was delayed in the St. Clair river, instead of after the delay and when the voyage had been resumed; and is a full answer to the claim

made in this case that the defendant railroad company is liable because the flood which destroyed plaintiff's merchandise occurred while the delay at Dayton continued.

The principle announced by the Supreme Court in *Miller* v. *B. & O. S. W. R. R. Co.*, 78 Ohio State, 309, and in *Daniels* v. *Ballentine*, 23 Ohio State, 533, appears to this court to be exactly the same, to-wit: that a defendant in an action for negligence can be held to respond in damages only for the immediate and proximate result of the negligent act complained of, and that in determining what is the direct or proximate cause, the rule requires that the injury sustained shall be the natural and probable consequence, or probable result, of the negligence alleged, *i. e.*, such consequence as under the surrounding circumstances of the particular case might and should have been foreseen or anticipated by the wrong-doer, as likely to follow his negligent act.

Not only is it agreed in the agreed statement of facts submitted to the court in this case that the flood which caused the loss of plaintiff's merchandise to recover damages for which this case is brought, was an act of God, and that the defendant railway company could not reasonably have anticipated such flood, but a full consideration of all the surrounding circumstances leads the mind of the court to the conclusion that the delay in shipment at Dayton was not a direct or proximate cause of the loss of the merchandise. The loss of the merchandise was, under all the surrounding circumstances, not the natural and probable consequence of the delay, *i. e.*, in the language of the Supreme Court in *Miller* v. *R. R. Co.*, the loss of the merchandise by the flood was not such consequence as under the surrounding circumstances of the case might and should have been foreseen or anticipated by the railroad company as likely to follow its negligent act in delaying the shipment.

Therefore, under the law as stated by the Supreme Court of Ohio, and for the reasons given, the finding in this case must be in favor of the defendants, and judgment awarded against the plaintiff for costs.